Our third case is 23-4538, United States v. Palmer, Mr. Martin. Whatever you're ready. May it please the court. Jared Paul Martin on behalf of Gregory Maxwell Palmer. This case is about Mr. Palmer's developmental language disorder and the court's evidentiary errors that prevented him from presenting a full and fair defense. The crux of Mr. Palmer's defense was that he reads and understands at a fourth grade level and that he did not understand question 15, which is at an eighth grade level. The court's ruling about grade levels left Mr. Palmer unable to explain his language disorder and the difficulty of question 15 in a framework a jury could understand. The government then exploited that ruling by itself using grade levels to prove mens  In its closing, the government argued that Mr. Palmer understood the question because he reported an 11th grade reading level on a form. Because Dr. Fahey's testimony about grade levels undercuts every piece of evidence the government relied on. The argument is that he wasn't given an opportunity to have the kind of witnesses that he wanted. Is that right? In other words, that he just didn't, he didn't get to present the evidence he wanted to present. In other words, he didn't get to present his mother and others did. Is that your argument here? Yes. Yes. So as far as the expert testimony, your honor. Because the evidence that you are saying wasn't presented is coming from, it would come from somewhere. And where would it come from? So the evidence would have come from Dr. Fahey. She was the expert in the case that her testimony was admitted, but the court did not allow her to testify about grade levels under rule 704. And our argument is. The court couldn't. I mean, if you, if she was testifying regarding mens rea of the defendant, is that permitted in a criminal case? So she can't testify to the ultimate issue of mens rea, but she can testify about inferences that can lead a jury itself to determine that ultimate mens rea. And that's what she should have been able to do here because it would have explained his mental health disorder in a way that a jury could understand. The grade level testimony is vital, strong, and unique evidence for at least three reasons. In Diaz, Justice Jackson highlighted that mental state evidence can be of critical assistance and play a pivotal role in helping jurors to better understand complicated mental health issues. And that's what we have here. Testimony about grade levels explains the language disorder. Everyone understands grade levels. He understands the fourth grade. He understands the third grade. He reads at the high school level. This testimony contextualizing the grade level at which Mr. Palmer could listen and read would have helped jurors better understand this complicated language disorder and would have provided reasonable doubt as to whether he knowingly lied on the application. Is there an argument that, you know, assuming that this was an error, that there was other evidence in the record that essentially said the same thing, including evidence relating to the fact that your client scored in the second and first percentiles on reading tests and similar evidence such that this evidence might at best have been cumulative and therefore harmless? I don't think it would have been cumulative, Your Honor, because it was just so vital. And if you look at the... Okay, why is that? Why the testimony is so vital? Yeah, because it explains it's... Yeah, I'm sorry. It's vital in a context different from the other evidence already in the record. Yes, so the other evidence in the record, Dr. Fahey testified about his language disorder, but she wasn't able to do it in a framework that a jury would understand. And she also wasn't able to explain the difficulty level of question 15. It's a confusing question. Have you ever committed a crime or offense for which you're not arrested? What does that mean? The question has actually been changed since then. It no longer asks that, and I think we all know why, because that's confusing. But her testimony would have explained to a jury that question is at least at an eighth grade level up to a high school level. And then the jury could look at the disparity between that and this fourth grade reading level, and then draw their ultimate conclusion about mens rea. We didn't ask Dr. Fahey to testify about mental state. We didn't ask her to testify about the element of the crime charge. We asked her to present evidence about grade levels that a jury would be able to understand. And the fact that she didn't do that, Mr. Palmer wasn't able to present a form for it. What is it about that question that's confusing? Because I think there's a lot of ways you can interpret it, because it uses the term arrest. And I think you think of arrest like, well, I've never had any law enforcement contact. I think it's confusing, and I think that's why it was changed. Have you ever committed a crime or offense for which you're not arrested? It's tough. And Dr. Fahey's testimony could have explained how tough that is, that it's at least at an eighth grade level. And a jury should have been able to do that. With all due respect to eighth graders, and it's probably a lot about eighth grade schooling that I don't remember, but that eighth grade level doesn't seem that tough. I respectfully disagree, Your Honor. I think it's a confusing question. I think that's why they changed it on the application. And I think jurors should have been able to make that determination. Can my third grade daughter understand this question? I don't think so. That information should have been presented to the jury. It wasn't. And the problematic thing is the judge didn't allow it in under Rule 704. That was a violation. I think Diaz makes clear that was a violation. Grade levels are not mental evidence. Grade levels are not mens rea. Can I ask you about your argument that the prosecution was delayed? Which was your first argument? Yes. Yes. As I understand it, there's no indication that the government acted in bad faith. Do you agree with that? So I don't agree with that, and I think where we probably need to start is the Supreme Court seminal decision in Lovasco. Because the Supreme Court requires that the due process inquiry must consider the reasons for the delay as well as the prejudice to be accused. And we don't know the government's reasons for delay because the court made no findings about that. What was the reason for the delay here? That's the question, Your Honor. We don't know. Usually what the government will say is we're conducting these investigations at these times. That's not here. And actually what the government said is this is a simple case that doesn't need any investigations. And the district court judge assumed that the government knew about this case in 2012. So if they knew about the case in 2012, why did they wait until 2021, a month before the expiration of statute of limitations? We don't know. That's error. The court has to consider the reasons for the delay. We do not know. What vitality does the due process analysis have in light of the presence of the statute of limitations? Isn't the setting, the question I was having was, doesn't the setting of the statute of limitations sort of subsume the due process argument and say that if this is within the statutory limitations period, that due process was observed? I mean, you've got, there's no question here that the statute of limitations was 10 years and the prosecution was brought within eight years, which is a very long delay. And I, you know, I understand that, that prosecution should not be delayed that long. But on the other hand, I'm wondering if the formal statutory of limitations doesn't supersede the due process analysis and whether that's really not, whether that's the ultimate measure. Sure. I think that the statute of limitations is the outer framework. I totally understand that. But the reason, there's a reason why the Supreme Court decided Lavosko. There's a reason why we look at pre-indictment delay, because in some circumstances, even if it falls within the statute of limitations, in some circumstances, it does violate due process. And this is the case here. Well, what are the circumstances here that would lead to a due process violation given the statute of limitations? I don't understand. Sure, Your Honor. So he lost, so first of all, I will say the government, the court should have looked into the reasons for delay. And we don't know the government's reason. And when the government waits until a month before the statute of limitations, they should realize that there could be evidence lost that would benefit the defendant. And that's what happens here. He lost vital testimony from his mother, who unfortunately passed away during that delay. I understand that his mother died in the interim before the, I thought that there were a number of other individuals that could have testified to his cognitive impairment other than simply than his mother, that I understand there were multiple people who could have testified as to his cognitive impairment, which is, I think, a major, a big part of your case on the men's array point. Isn't that true that there were other, that his mother was not as important as that was? The mother's testimony was not the sole testimony going to that cognitive impairment point? So her testimony was vital. And first of all, Mr. Palmer asked to have a hearing. So he could tell the judge, present that to the judge, she was the only person that could provide that intimate kind of information about his mental health condition. So could I ask you about that? So this is based on his assertion, Mr. Palmer's assertion, about what his mother would have said? That's it? So it is his assertion, but that assertion is grounded in specific facts in the record. We know that he had a borderline intellectual functioning. He had an IQ of between 72 and 75. And we know from various documents in the record that after his mother died, he didn't have anyone else to write to. So his mother really did have that special role. And I think almost anyone can understand that a mother has a very special role. His mother did have a special role in that. His true mother invariably have a special role. But your opponents point out that her testimony was not relevant at the time of the offense, at the time that the false statements were made, that her testimony went to a period of time that then at the time the false statements were made, and therefore the prejudice, if such there was, was mitigated. Is that a fair point? Well, actually, I would disagree with that, Judge Wilkinson, because his mother would have testified to his lifelong disability. He had it throughout his life. And she was the only person who could have testified to that lifelong mental health condition. And so it's very important, too, because the court wouldn't let Dr. Fahey testify that it was a lifelong condition. She wouldn't let, the court would not let Dr. Fahey testify that when he filled out the application, he was suffering from this disorder. But his mother could have built the bridge and let the jury understand that he was suffering from that mental illness at the time of the offense. I thought his mother's testimony related to a period other than at the time the false statements were made. Yeah, I believe, if I'm understanding you, his mother's testimony would have been to his lifelong developmental language disorder. You're saying there was no variation? You're saying there's no variation in terms of the cognitive impairment? That it was level throughout his life? So the way that Dr. Fahey explained it is that this is an element that I understand was like from birth. It's developmental. And so he, it's so severe that his development did not exceed past the fourth grade level for reading and comprehension. And he wrote at the second grade level. Thank you, Mr. Martin. Mr. Enright. May it please the court, Anthony Enright for the United States. Counselor, let me just ask you on that last point. I don't understand exactly why the government would need to wait eight years before bringing this prosecution. That's a long period of time to leave somebody hanging. I mean, you know, the prospect of a criminal prosecution is something that is bound to trouble one's peace of mind and give one a considerable mental state of apprehension. Eight years is a good bit of time. I realize the statute of limitations was 10 years. But why didn't you bring this earlier and let some resolution be had? Because, you know, you realize that until people, if people have the prospect of an indictment and a trial and investigations and all that goes, all the sort of appurtenances that go along with the criminal justice process, and they're dealing with that apprehension for eight years. Is there some reason that you waited that long? Absolutely, Your Honor. And I want to correct the record because I think my friend said that we normally state, I want to correct the record because I think my friend said that we normally state when the investigation occurred and for some reason said we didn't in this case. But we did on page 89, page 123, page 91 of the joint appendix. We identified this crime through an operation that began in 2019, as we told the district court, without any dispute. Answer my question. Why did it take this long to bring this prosecution? We didn't piece together that he had made false statements on this form and that he had committed the crime beforehand until Operation False Haven went and looked for people who had done so beginning in 2019. Well, you had the, but you had the, the statements that he made to the immigration officers and everything. You had those for a good long time. Yes, and he told us that he had not committed any crimes for which he had not been arrested. How long would it take to investigate the falsity of the statements? Somebody would need to put together the idea that we need to look. Don't you have the record of what his, what his past criminal history was? Not until afterward, Your Honor, because what happened was he committed the crime. He then applied for naturalization, falsely stated he had never committed a crime before, and he was later arrested. Can't you find the answer to that pretty quickly as to whether he committed or didn't commit a crime? If someone has the thought to look for it, and the reason nobody thought to look for it was because he put on his form, I've never committed a crime. And then we asked him about, we did further investigate that form because he had sat for a naturalization interview and the immigration services asked him, is that true? Have you committed a crime for which you've not been arrested? He answered, no. Is that true? He said, no, that's true. So if he wanted us to find out, he could have told us right then and there. I mean, this wasn't, this wasn't a conviction, right? It wasn't a, it wasn't a conviction until several years. Unless you're, unless the government is going to be required to investigate every statement for every representation that an immigrant is going to make. I mean, that, that seems patently unreasonable. No, Your Honor. I think most people would think it would not, would not consider it prejudicial that we're not fly specking somebody's statement that goes on a form every single, against every single encounter with law enforcement. This was a state prosecution and a state conviction. This wasn't even in the, uh, you know, jurisdiction of any United States officer. My friend did, did file something that shows that there was an FBI background check conducted, but that background check didn't reveal either the, either the, the, either the, the crime or the naturalization application. So there was really nothing there. Also, Your Honor, there is a case, United States versus VIA, we cited, which says that when you're talking about the measure, the measure is when the prosecution, which in that case was the process, the U.S., assistant U.S. attorney and the agent assisting them in that prosecution has probable cause to indict, that, that didn't occur until at the very latest, 2019 or 2020 or 21, after the defendant's mother has died. So just as a routine matter, does the government generally not, does the government generally accept the representations and all these forms of face value? The, the, the, the immigration officer actually testified to that. You could, they conduct a, they conduct a, um, conduct a- But, but no, I wonder is, is, is the way these things work, just trying to get to what happens in the field. Um, does the government have the state, statement that accepts it at face value unless evidence comes to its attention that there was something incorrect? I think there were generally need to be, that's generally correct, your honor. The, the immigration officer who conducted the interview with him, did he explain that? Did he accept it at face value unless there's, unless information came to you that that was incorrect? Yes, that generally would. I think he testified that they don't conduct some type of a, of a, of a, of a check just because somebody answers the form correctly, uh, incorrectly. They do rely on the, on the applicant being truthful and accurate, which is why it's sworn under penalty of perjury. And, and that's a very important thing. And you have to take an oath at your naturalization ceremony. It's not something that, that, that is just, ah, we're trying to trick you. We rely on you to be truthful when you're making a statement seeking naturalization. Um, I, I also want to emphasize that this standard, the statute of limitations, as I think your honor alluded to, even the Supreme Court said, that's the primary safeguard, even against losing evidence over time and for, for there to be a constitutional obligation on us, there has to be, or, or, or, or, you know, this is a big thing. This is, we're going to dismiss the indictment before you even get to your burden, present your burden of proof. You can't prosecute them. For that to happen, there has to be some culpability on the part of the United States and the languages with respect to circumstances suggesting that the delay would impair the ability to mount an effective defense. So the question isn't, should we have initiated this operation as a policy matter earlier? The question is, were there any facts we knew or should have known? Well, there's no indication. There's no indication here that you acted in bad faith. Exactly, your honor. And in order for there to be bad faith, we would have had to really know that there's a serious risk that he's going to lose his mother and that his mother has exculpatory evidence. Statement of limitations is the key, is the key element here. Absolutely, your honor. It doesn't completely preclude any jurisdictional, I mean, any due process analysis if evidence comes that the government acted in bad faith or if you, if you delay the prosecution for strategic reasons that you, that a key witness for the defense was in ill health and you wanted that witness, you wanted that witness to die before the time of the trial or whatever, that would be evidence of bad faith. Exactly. That's what, that's what I think the standard gets at. It gets at gamesmanship or maybe recklessness or negligence, but there has to be some... That's not present here. Exactly, your honor. Exactly. I don't think there's any reason there's any, there's any plausible allegation anyone could make that we were trying to do something related to his mother. The only point I was trying to make is that the statute of limitations doesn't preclude inquiry into the government's good faith or bad faith. It doesn't preclude in the due process analysis if evidence of bad faith were to  That's correct, your honor. I mean, certainly if there's, if there's an effort to delay specifically to disadvantage the defendant in a significant way, that's going to be a real problem for us. There are all sorts of strategic reasons one could, one can have to want to delay an indictment or want to delay a trial or whatever that is. Yeah. And I will point out in the absence of something like that, prosecute, time is the enemy of the prosecutor. We have the burden of proof and it's a heavy one beyond a reasonable doubt at trial. So if we don't have any reason to think we're going to gain an advantage, there's not, it's not helpful to us to wait, but that what, what the court's cases talk about, the dissipation of evidence, the failure of memories, the death of witnesses hurts us. Fair, it's fair point. You don't want to go forward with a half-baked case. Yeah. And it gets, it, it, it bakes less as time moves on to, to use that analogy. I do want to talk about the court's rule 70B ruling, 704B ruling. The, the, what Diaz holds is an expert can't testify that the defendant was part of a group of people that all have a particular mental state that falls short of what the crime requires. And when Dr. Diaz is a grade four level and the question is a grade eight level, a jury could easily take it as exactly that. He's in this group and it's short of the group necessary to knowingly answer the question falsely. But the, you know, the answers to those questions on their own are the kinds of things that are not, it's not, that's not a junk science that people routinely talk about individuals reading grade levels. It's not who she didn't ultimately say. And then because of that, he didn't have the mens rea to commit the crime. I think that she planned to say that she was stopped at that point. Yes. And, and, and that's fair, your honor. I honestly, there's not an inference here because it's not most people who read at this fourth grade level can't read at the eighth grade level, but some can. She left it at that. And I think there's some room for the court to say, the district court to say, you know, there's a good chance the court, the jury is going to take it like that. But the jury is going to take it as just, look, if I accept that he's, she's, he's, he's grade four, the things at grade eight. If I just credit that there's no inference to draw. He can't possibly understand the question. And there's room under 703 for the court to say, that's going to be confusing to the jury and I'm not going to let it in. So it doesn't necessarily, there can be a way to interpret it where there's an inference, although frankly, I don't know that there, I don't see it, but that wouldn't establish an abuse of discretion by the court. But I do want to emphasize that the evidence that did come in was as, as your honor mentioned, he, he was, he performed poorly to very poor across eight domains. That's what Dr. Fahey testified. So there was ample evidence from the defense side that an expert has evaluated him and said, his reading comprehension is very, very poor here. And from the flip side, there's a lot of evidence from us that he could understand this basic question, including that he, the court, you know, as I think your honor alluded to, the jury can look at that question and decide for itself, whether it's unusually complex and the jury. I remember when I went to baby judge school, heard from a, heard from a very seasoned district judge and a very wise appellate judge, and they both said, when in doubt, let it in. When in doubt, let it in. You know, you probably run a little bit greater risk with the exclusion than, than you do with just letting it go. I think that's correct, your honor. That's a good rule of thumb, isn't it? Yes, your honor. I'm an appellate attorney. So that's my rule too. I'm like, Hey, you let it in. Then we don't have anything to argue about. But I also understand that it's important to, you know, sometimes you're not, you know, I said, when in doubt, let it in, but sometimes you're not in doubt. And that, I think, that I think is an issue here. I honestly, we, we, we objected to this evidence on many different grounds and that, that is one the district court focused on and so didn't get the chance to look at some others. And it's particularly rare that I would ask the court to say, you know, affirm on grounds of 702, which is really a district court's discretionary thing. But in this case, the expert, that, that creates an alternative ground for this court to affirm too, because in this case, the expert actually said, the methodology I use wouldn't be helpful. The whole crux of the case revolved around the question of men's right.  And revolved around the question of whether he had the cognitive ability to understand the question. Yes. And the jury heard a lot of evidence on that. And, and the expert's testimony was that, all such and such lack the cognizability of that, which, which sort of adopted the defense conclusion of the case, the conclusive argument was that he could not have understood the question and the expert testimony is saying because all people would, fourth understood this, there was, there was no room left for the fact, for the possibility that, that someone in his circumstances might have understood it very well. That's, that's exactly how I think the, the court was concerned the jury would take it. And, and, and candidly, that's what the defendant, that's how the defendant presented it. In her notice, she, she rose exactly that syllogism. She's at eighth grade, his reading fluency and comprehension is at grade four, the readability of the question 15 is at grade eight. That disparity led to the opinion that Palmer's not able to understand question 15. It's not an inference. It's just a logical syllogism. If he's at four and he needs to be at eight, he doesn't have the mens rea. Obviously it's not the exact language of the statute, but it's an evidentiary question and it's probably something of a judgment call as well.  But I also, the, the evidence the court, the jury heard included that he told a state court he could read and write at the 11th, at the 11th grade level. He completed a writing test and a reading test and a civics test to get the citizenship. And he orally answered the question. So even if his reading comprehension was poor, it was spoken to him. He read books and wrote books for pleasure routinely. I think he said he read a book a month, Westerns, love stories. He wrote tons of handwritten letters and his ex-wife testified that, you know, he engaged in these social interactions and spoke to big groups and didn't have any  And he heard from Dr. Fahey that he had serious reading deficiencies. What are your thoughts on the pavilion? I think it's a question that really is in, I think the district court got it right when it said it was in the wrong forum. You can't collaterally attack a prior conviction for the first time in a federal or a state criminal conviction in a, in a federal criminal case, except on one ground. And that's the denial of the complete denial of counsel. And the Supreme Court explicitly rejected the idea that that extends to ineffective assistance of counsel. Not once, but three times. The, the, the Custis decision is United States versus Custis. Yes, Your Honor. Is right on point. I agree. On that issue. And it says we're not going to have collateral attacks on state convictions in federal criminal trials. Correct. You can take it to state court. You can take it in a federal habeas. There's a way for undoing these convictions and that is to raise your ineffectiveness, ineffective assistance claim in a habeas proceeding. Yes, Your Honor. Where the sole focus is on that. And if you try to attack these convictions in federal criminal trial, you get that awkward position of having a trial within a trial. And something that's completely, you have to have a habeas proceeding during the course of the trial. And then you have to have a trial within a trial. And the Supreme Court said this, and I think it was Custis and Daniels and two or three decisions. Yeah. That say, no, this would complicate federal trials significantly. Yes, Your Honor, there's no unfairness because we know in North Carolina specifically, they have a very, very, I think it has a very long statute of limitations, a very robust post-conviction process. And even if there's a problem with it, you can take it to federal court. So he was open and it's been, I mean, many years past as we discussed, he had plenty of opportunity to take his conviction to state court and challenge it. He chose not to do that. I suspect because it's a very good- He's going to challenge it in a federal habeas proceeding. Absolutely. He's got a federal claim. Absolutely. All those avenues were open to him. And the, what was not open to him was to challenge it in his federal trial and to ask the district court to exclude this plea, which rules of evidence permit, on that basis. I have very little time left, but if this court has no further questions, I'll yield the balance of it back to the court. Thank you very much. Thank you, Your Honor. Just a couple of thoughts, Your Honors, and then I'll have some closing remarks and then I'll be finished. But I do want to highlight that the district court operated under a misunderstanding of the law when it refused to allow Dr. Fahey to testify about grade levels. I'm asking the court to please look at rule 704 because grade levels, it's not mens rea, grade levels are not an element of the crime charged. It just isn't. So the court's finding was erroneous under rule 704. I won't give you a question of mens rea. It's a question of whether he knowingly made a false statement. Exactly, Your Honor. So that's the element. That's the element that the jury, the jury makes that final inferential link is the mens rea, knowingly lying. Wouldn't it be within the discretion of the district judge to say, no, it's just flat out announces what your verdict should be and that's the jury's job. I don't, I think what we're saying is the court's finding under 704 was wrong because the plain text allows the testimony. The testimony was very flat and conclusive and it didn't leave much, the proposed testimony didn't leave much room for doubt. Um, he said, no, this is true in all cases. Um, and it was, it, it, it seemed a very un-nuanced and a very flat conclusion. It left no room for, for questions or doubt or anything. So if I, if I could respond to that, Dr. Fahey wasn't going to testify that he had mens rea that all fourth graders could not understand question 15. She, she wasn't giving those, that conclusive testimony. She was just giving testimony about the grade level of his language disorder and the grade level that he wrote at. That's not mens rea evidence. And so the court said that, okay, Dr. Palmer should be able to testify. He reads at a fourth grade level because that's not an ultimate issue. You can testify to question 15. It's written at an eighth grade level. That again, is not about the defendant. Cannot testify as to whether he understood 15 because that's the ultimate issue. All of that, even if there's error on that part, why is it not harmless? I mean, given the, given the information that the government presented at trial why it was significant as that he did in fact, understood, understand 15. Why is that not harmless? So your honor, it's not harmless because her evidence about grade levels undercut, undercut every single piece of evidence that the government relied on to establish mens rea. Look at the government's closing. What did they argue? Grade levels that he reported in an 11th grade reading level on a form. If Dr. Fahey would have been able to testify about grade levels, I think anyone would be able to understand, like, I know people who made it to the 11th grade, but they don't read very well, you know, but the jury wasn't able to hear that evidence. And Mr. Palmer had a right to present under rule 704 and under the rules of evidence. So that's, that's our argument there. Um, I would like to highlight, um, a question that judge Wilkinson asked earlier, uh, that I really liked. It was like, that's a long time to leave someone hanging. Great question. And what I present to the court is the district court judge should have asked that question at a hearing. And the government testified to that. Can I ask about that? So maybe I'm misunderstanding the facts. So the question was addressed to your client was whether or not he had ever committed a crime for which he had not been arrested, right? And he answered no. And at the time, at least according to the government, that was wrong because he had committed these offenses that ultimately he was convicted of, I think a couple of years later, or when did that happen? So, so the timing is very important because, um, that can, that state conviction was in 2013 and I think it's really important to understand the timeline because the 2013 case. Well, before you get to that, at the time that, that, that your client answered that question, Mr. says in most instances, you take that answer at face value. I suppose that even if they had run, maybe they did a background check, I assume they did, they would not have found any convictions, right? Because he had not been convicted when he answered at the time he answered the question. Um, so what are they supposed to be looking for? So I think what's really important is the courts did say that they assumed that the government knew about that state charge in 2013. Um, so that's, that's important. What, what is that assumption based on? I, we don't know that the court didn't hold a hearing. Um, but he made that, the district court judge made that statement that they knew about the, um, the court assumed that they knew about that state case in 2013. And so the question is, why did they wait so long if they knew in 2013? And I think these are questions that should have been looked into at a hearing. And it seems a little odd that the appeals judges are asking these questions because this really should have been settled at a hearing by the district court judge. We don't know so many, there are so many things we don't know in this case. And I think what's very problematic, the government mentions the operation, but the government, from my understanding, has not said the investigations they were doing. From 2013 to 2021, what investigations were they doing? And under LaBosco, the court has to determine the government's reasons for delay. We just don't have that. What is the reasons for their delay? We don't know. So it needs to go back to the district court for that. And I'm sorry. Did you, did you press for a hearing on this point? We did, Judge Wilkinson. We asked for a hearing, we cited his due process rights, we told specific information about his mother, that she was the only, only witness available. And we asked to present more evidence about it and we didn't get a hearing. And so now we have all these questions because the judge never made any findings as to the reason for delay. And the judge needs to do that under LaBosco, it's black letter law. And I have just, if I could, just a very quick closing thoughts and then I'll be.  Thank you, Your Honor. In closing, as a public defender, it's an honor and privilege to tell my client's stories. Attorneys Erin Taylor and Myra Cause represented Mr. Palmer at trial and Ms. Cause is here today in court to show her support. Ms. Taylor and Ms. Cause are brilliant attorneys who zealously fought to defend Mr. Palmer's constitutional rights, but they weren't able to tell his whole story due to the court's evidentiary errors and failing to hold a hearing that he should have held. A couple of quotes, Martin Luther King Jr. stated, we are tied together in a single garment of destiny, caught in an Judge Gregory referenced this quote in Nathaniel Black's case, stating our individual freedom is inextricably bound to the freedom of others. When I think about these quotes, I think about Mr. Palmer's case. When any defendant is denied core protections under the due process clause, it affects all of us. Mr. Palmer should be able to tell his full story and we respectfully request the court vacate his conviction. Thank you. All right. Thank you, Mr.  Thank both counsel for their fine arguments here today. We'll come down and greet you and move on to our final case.
judges: Albert Diaz, J. Harvie Wilkinson III, James Andrew Wynn